IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KOPPELMAN VENTURES LLC

      Plaintiff,

v.

EVERGREEN ENERGY, INC., formerly known as KFx Inc. and K-FUEL, Inc., and
KFx TECHNOLOGY, formerly known as K-FUEL, LLC, THOMAS J. STONER, JR.,
DIANA KUBIK, WILLIAM G. LAUGHLIN and ILYAS KHAN

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW the Plaintiff Koppelman Ventures LLC, ("KVLLC"), by and

through its counsel, The Madden Law Firm, and for its Complaint against the Defendants

Evergreen Energy Inc., formerly known as KFx Inc. and as K-Fuel Inc., ("Evergreen"),

KFx Technology, LLC, formerly known as K-Fuel, LLC, ("KFx Technology"), Thomas

J. Stoner, Jr., ('Stoner"),  Diana Kubik, ("Kubik"), William G. Laughlin, ("Laughlin"),

and Ilyas Khan, ("Khan"), states and alleges as follows:

### THE PARTIES AND JURISDICTION

1.      KVLLC is a California limited liability company with its principal place

of business located in Sherman Oaks, California.

2.      Evergreen is a Delaware corporation with its principal place of business

located in Denver, Colorado, and was formerly known as KFx Inc. and K-Fuel Inc.

3.      KFx Technology is a Delaware limited liability company with its principal

place of business located in Denver, Colorado, and was formerly known as K-Fuel, LLC.

4.     Stoner, Kubik, Laughlin and Khan are all residents of the state of Colorado and were and are executive officers or executive consultants of Evergreen involved in its actions and inactions as described below.

5.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, as the amount in controversy, without interest and costs, exceed the sum or value specified by 28 U.S.C. § 1332, and Defendants are citizens of a different state than that which the Plaintiff is a citizen.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the Defendants reside in Colorado.

## GENERAL ALLEGATIONS

**Background Facts.**

7.     Edward Koppelman, individually and as trustee of the F.H. Prince Trust and the River Front Trust (collectively, "Koppelman"), owned interests and assets related to certain patents, licenses, processes and other intellectual property relating to the production of an upgraded coal-type fuel, called "K-Fuel." These interests and assets are generally referred to as the "K-Fuel/Koppelman Rights" and include, but are not limited to, the following: U.S. patents and trademarks; patents, patent applications, or other patent rights obtained in the future relating to the production of K-Fuel or which relate to the de-watering or upgrading of high moisture content fuels or feedstocks or the conversion of cellulosic or carbonaceous materials to fuels or other end product, including, but not limited to activated carbon; all foreign patents, patent applications, patent rights, or trademarks corresponding to any of the foregoing described patents and

trademarks; and all inventions, techniques, know-how, and proprietary information related to any of the foregoing.

8.      Patents that are included in the K-Fuel/Koppelman Rights include, but are not limited to, the following U.S. Patents, and their respective foreign counterparts:

    5,290,523;
    5,769,908;
    5,746,787;
    6,266,894;
    6,249,989;
    6,185,841;
    6,878,174;
    6,497,737;
    6,506,224;
    7,198,655;
    6,497,054.

9.      In addition, K-Fuel/Koppelman Rights include, but are not limited to, the following trademark and service mark:

    K-Fuel® - US Reg. No. 3,171,807, registered November 14, 2006;
    K-Direct™ - US Reg. No. 3,397,666, registered March 8, 2008.

10.      Under that certain Royalty Agreement, dated December 29, 1992, between Evergreen, under its then name of K-Fuel Inc., as buyer, and Koppelman, as seller, (the "1992 Royalty Agreement"), Koppelman agreed to sell to Evergreen/K-Fuel Inc. all his and the trusts' interests in their K-Fuel Interests and K-Fuel Related Interests, as more fully defined in the 1992 Royalty Agreement, and which include the K-Fuel/Koppelman Rights.  In this respect, an Amendment to Agreements, also dated December 29, 1992, and an Amendment to Royalty Agreement, dated August 6, 1997, was also entered into by Koppelman and Evergreen/K-Fuel Inc.  These amendments, however, do not materially affect the rights and obligations at issue herein.

11.     The purchase price to be paid under the 1992 Royalty Agreement by

Evergreen/K-Fuel Inc., or by any successor owner as defined in the 1992 Royalty

Agreement, was $75,721,644.00 payable by a Royalty equal to the lesser of (a) $.84225

per ton for each ton of K-Fuel Production, as defined, sold by Evergreen/K-Fuel Inc., or

its licensees or sublicensees, or (b) 2.0% time the K-Fuel Selling Price times 84.225% for

each such ton of K-Fuel Production sold by Evergreen/K-Fuel Inc., or its licensees or

sublicensees.  Such payments were to be made on quarterly basis each year, with

Evergreen/K-Fuel Inc. or any successor owner to submit to the seller within forty-five

days following the end of each calendar quarter a statement certified by Evergreen/K-

Fuel Inc.'s Chief Financial Officer which showed in reasonable detail the K-Fuel

Production for such quarter, the K-Fuel Selling Price for the quarter, and the Royalty

amount due for the quarter.  The 1992 Royalty Agreement also provides that any such

payment not timely made shall bear interest at the rate of 12% per annum and that the

agreement shall be governed by Colorado law.

12.     By June 3, 1996, K-Fuel Inc. had changed its name to KFx Inc.  As of

such date, Evergreen, under its then name of KFx Inc., entered into that certain

Agreement to Amend Amendment to Agreements and Royalty Agreement, (the "1996

Amendment"), with Koppelman, individually and as trustee for the above trusts, and with

Theodore Venners, ("Venners").  It also confirmed that Evergreen/KFx and Kennecott

Alternative Fuels, Inc. had formed K-Fuel, LLC, issuing it exclusive licenses regarding

the K-Fuel/Koppelman Rights that provided for payment of license fees and royalties to

Evergreen/KFx, (referred to therein as the "LLC Licenses").  It also stated that

Koppelman had granted a non-exclusive license to KFx Fuel Partners, L.P., (referred therein as the "LP License").

13.     The 1996 Amendment further provided that the Royalty under the 1992 Royalty Agreement would be reduced by a $300,000 cash payment to Koppelman with the balance of the $75,721,644 then owed to Koppelman payable in amounts equal to 25% of both license fee payments and royalty payments received by Evergreen/KFx under the LP License and the LLC Licenses.  It further stated that all other terms, conditions, covenants and agreement in the 1992 Royalty Agreement shall remain in full force and effect, except as amended hereby.

14.     KVLLC was formed on or about January 8, 1997 and thereafter acquired all right, title and interest in payment of the then $72,721,644 balance of the Royalty, payable by Evergreen/KFx Inc. under the 1992 Royalty Agreement and the 1996 Amendment.

15.     Subsequent to June 3, 1996, Evergreen/KFx Inc. acquired all of Kennecott Alternative Fuels, Inc.'s ownership interest in K-Fuel, LLC, who subsequently changed its name to KFx Technology, LLC.  At the time of its acquisition of Kennecott Alternative Fuels, Inc.'s interest,  Evergreen became the sole owner and parent of KFx Technology, LLC which, in turn, now holds title to all of the K-Fuel/Koppelman Rights, K-Fuel Interests and K-Fuel Related Interests, all as defined in the 1992 Royalty Agreement and the 1996 Amendment.  Since its acquisition of sole ownership in KFx Technology, LLC Evergreen has totally directed and controlled all actions and inactions of KFx Technology, LLC.

**The Asia Master License.**

5

16.    On or about April 23, 2007, Evergreen entered into that certain Master

License with Evergreen Energy Asia Pacific Corp. ("EEAP), a Delaware corporation,

(the "Asia Master License") under which Evergreen granted EEAP exclusive non-

transferable rights and licenses to sub-license "K-Fuel Technology" rights in various

countries in Eastern Asia and Southeastern Asia, as well as in Australia and New Zealand

and non-exclusive non-transferable rights and licenses to sub-license "K-Fuel

Technology" in other parts of the world.

17.    Under the Asia Master License, EEAP is to receive from any Project

Entity established Five Dollars, U.S. ($5.00) for each ton of the related plant's annual

output of K-Fuel, as well as 5% of gross sales and a carried interest of 25% of the Project

Entities' net revenues.

18.    In addition, under the Asia Master License, EEAP is required, from sub-

licensee fees, royalty payments and other revenues it received from a sub-licensee, to pay

or direct that Evergreen shall receive sufficient revenue to pay, "the Koppelman Royalty

(being 25% of license fees and royalty payments)…" and after payment of the

Koppelman Royalty to pay or direct that Evergreen shall receive, "fifty percent (50%) of

the remaining license fee, royalties and other payments…"

19.    The initial and current shareholders of EEAP have been represented by

Evergreen to be Evergreen, who is represented to hold 96% of the shares thereof, and a

Japanese controlled corporation, Sumitomo Corporation, ("Sumitomo"), who is

represented to hold 4% of the shares thereof.  Although Evergreen has represented that no

revenues have been received from sub-licensees under the Asia Master License,

Sumitomo has already paid to Evergreen $4,000,000 in connection with the related

license rights it has obtained through the Asia Master License and its shareholder interest
in EEAP.

**The China Contract.**

20.      On or about January 9, 2009, Evergreen entered into that certain Equity
Joint Venture Contract, (the "China Contract"), with Beijing Gang Jing Hon Ren
Technology Co., Ltd., ("Beijing Technology"), a Mainland China company, to form
Evergreen-China Energy Technology Co., Ltd., ("Evergreen China"), a Sino-Foreign
Equity Joint Venture.

21.      Thereunder, each of the two parties hold an equal fifty percent (50%)
interest, with Evergreen to provide Evergreen China "the data, information, and
technology required to design, construct, commission, and operate K-Fuel Plants in
China," all of which is encompassed under the K-Fuel/Koppelman Rights.  Specifically,
Evergreen provided to Evergreen China rights to utilize the K-Fuel Patented Technology,
as described in **Exhibit 1**, hereto, and which is encompassed under the K-
Fuel/Koppelman Rights.

22.      Pursuant to the China Contract, Evergreen China is required to build a
new K-Fuel plant or to expand an existing plant within each eighteen month period after
three months from the normal operation of a first plant.

23.      Also pursuant to the China Contract, Evergreen and Evergreen China
entered into that certain K-fuel Technology License Contract under which Evergreen has
now provided Evergreen China with the exclusive right and license to use Patents, K-Fuel
Technology, Trademarks and other related K-Fuel/Koppelman Rights, within Evergreen
China's related territory, and the right to grant sub-licenses thereof, all without the

7

obligation to pay related royalties.  Specifically, the patents and trademark and service

mark licensed to Evergreen China include those identified in **Exhibit 2** hereto, all of

which are encompassed under the K-Fuel/Koppelman Rights.

24.    The consideration received by Evergreen for its transfer of the exclusive

license of the K-Fuel/Koppelman Rights to Evergreen China is the above 50% joint

venture interest in Evergreen China.

**Additional Anticipated Contracts.**

25.    On information and belief, Evergreen has negotiated and entered into

additional agreements, and is in the process of negotiating and entering into additional

agreements, all regarding the transfer of licenses and license rights to other third persons

and entities, including, but not limited to entities in Australia, with the intent not to

include provisions for payment or transfer to KVLLC of the consideration due KVLLC,

or which will become due it, under the 1992 Royalty Agreement and the 1996

Amendment.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**
**Evergreen and KFx Technology**

26.    KVLLC incorporates by reference the allegations set forth above.

27.    Evergreen and KFx Technology have failed to timely provide statements,

as required under the 1992 Royalty Agreement and the 1996 Amendment, within forty-

five days following the end of each calendar quarter showing in reasonable detail all K-

Fuel Production, the related Selling Price, and all payments or other consideration

received or paid for the granting or providing of licenses or license rights to the K-

Fuel/Koppelman Rights, as well as all payments or other consideration related to
Royalties.

     28.    Evergreen's and KFx Technology's failures to provide information as
alleged in Paragraph 26 specifically include failures to provide such information
concerning all matters, activities and actions of EEPA or relating to the Asia Master
Contract.

     29.    Evergreen's and KFx Technology's failures to provide information as
alleged in Paragraph 26 specifically include failures to provide such information
concerning all matters, activities and actions of Evergreen China or relating to the China
Contract.

     30.    Evergreen and KFx Technology have failed and refused to pay KVLLC,
as required under the 1992 Royalty Agreement and the 1996 Amendment, 25% of the
$4,000,000 payment received by Evergreen from Sumitomo.

     31.    On information and belief, KVLLC alleges that Evergreen and KFx
Technology have failed to pay KVLLC, as required under the 1992 Royalty Agreement
and the 1996 Amendment, 25% percent of other cash payments received by Evergreen,
directly, (or indirectly by payment to other entities owned and controlled in whole or in
part by Evergreen, such as EEPA and Evergreen China), which funds were received or
paid for the granting or providing of licenses and license rights to the K-Fuel/Koppelman
Rights, as well as all such payments related to Royalties.

     32.    Evergreen has failed and refused to assign and transfer to KVLLC, as
required under the 1992 Royalty Agreement and the 1996 Amendment, 25% of the non-
cash consideration Evergreen received for the granting and providing of licenses and

license rights to the K-Fuel/Koppelman Rights to Beijing Technology, through Evergreen China pursuant to the China Contract, such consideration received by Evergreen consisting of a fifty percent (50%) interest in Evergreen China.

33.    On information and belief, KVLCC alleges that Evergreen has failed, as required under the 1992 Royalty Agreement and the 1996 Amendment, to assign and transfer to KVLLC 25% of non-cash consideration received by Evergreen directly, or indirectly (by the giving of ownership interests in other entities such as EEPA and Evergreen China), for the granting and providing of licenses and license rights to the K-Fuel/Koppelman Rights to others.

34.    As a result of the actions and inactions of Evergreen and KFx Technology described above, KVLLC has suffered damages in an amount to be proven at trial and has not received the non-cash consideration due it under the 1992 Royalty Agreement and the 1996 Amendment.

**SECOND CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**
**Evergreen and KFx Technology**

35.    KVLLC incorporates by reference the allegations set forth above.

36.    Among other obligations imposed by the 1992 Royalty Agreement and the 1996 Amendment, Colorado law imposes on Evergreen and KFx Technology an obligation of good faith and fair dealing when carrying out their obligations under the Royalty Agreement and Amendment pursuant to C.R.S. § 4-1-203.

37.    The granting and providing of licenses and license rights to others by Evergreen of the K-Fuel/Koppelman Rights held by KFx Technology without clear provisions for the protection of payment of the license fee payment and royalty payments

due KVLLC were breaches of the implied covenant of good faith and fair dealing thereby depriving KVLLC of the benefits of the bargains.

38.    Evergreen's and KFx Technology's breach of their covenants of good faith and fair dealing caused KVLLC to suffer damages and losses.

**THIRD CLAIM FOR RELIEF**
**(Specific Performance)**
**Evergreen**

39.    KVLLC incorporates by reference the allegations set forth above.

40.    As stated, Evergreen received a fifty percent (50%) interest in Evergreen China for the granting and providing by Evergreen of licenses and license rights to the K-Fuel/Koppelman Rights to Beijing Technology through Beijing Technology's 50% interest in Evergreen China.

41.    The 1992 Royalty Agreement and the 1996 Amendment requires Evergreen to provide KVLLC with 25% of the consideration received by Evergreen from license fee payments and from royalty payments.  The Agreement and Amendment do not prohibit in kind payments of stock or business interests for such licenses or royalties, but do not except such payment from KVLLC's right to 25% thereof.  KVLLC is entitled to transfer and assignment to it of 25% of Evergreen's 50% interest, or 12.5% ownership interest in Evergreen China.

42.    Damages for a breach of contract to convey stock or other equity positions in business entities do not afford adequate relief and Colorado law provides for the remedy of specific performance for such breach of contract and KVLLC is entitled to such specific performance regarding Evergreen's interest in Evergreen China, as well as

11

in any other business entity in which Evergreen received an ownership or other payment

in kind for licenses and license rights to the K-Fuel/Koppelman Rights.

43.    KVLLC requests that the Court Order Evergreen to pay such sums and

convey such interests as described above.

### FOURTH CLAIM FOR RELIEF
### (Rescission and Restitution)
### Evergreen

44.    KVLLC incorporates by reference the allegations set forth above.

45.    As stated above, Evergreen breached the 1992 Royalty Agreement and

1996 Amendment by, among other things, failing to timely provided quarterly statements,

failing and refusing to pay KVLLC Royalties, and failing and refusing to assign and

transfer to KVLLC non-cash consideration received, all of which failures relate to the K-

Fuel/Koppelman Rights, including but not limited to payments and other consideration

relating to the Asia Master Contract, The China Contract and the Additional Anticipated

Contracts, as described above.

46.    The breaches set forth above are substantial.

47.    Damages for the breaches are inadequate, difficult, or impossible to

assess.  In addition, KVLLC has suffered and will continue to suffer irreparable injury as

a result of the breaches.

48.    Accordingly, equity dictates rescission of the 1992 Royalty Agreement

and the 1996 Amendment as appropriate and restitution to KVLLC of the K-

Fuel/Koppelman Rights and all other related rights thereto, including, in the alternative,

partial rescission and restitution if and as equity dictates appropriate.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Judgment)
### Evergreen

49.    A present uncertainty and controversy exist between KVLLC and

Evergreen regarding the matters stated above.

50.    Evergreen seeks declaratory relief, pursuant to the Colorado Declaratory

Judgments Law, C.R.S. § 13-51-101 et seq. and Colo. R. Civ. P. 57 on the following

issues regarding the 1992 Royalty Agreement and the 1996 Amendment.

      a.  Whether the 1992 Royalty Agreement and the 1996 Amendment require

Evergreen to pay KVLLC 25% of all cash payment received by

Evergreen, directly or indirectly by payment to other entities owned and

controlled in whole or in part by Evergreen, which funds were received or

paid in whole or in part for the granting or providing of licenses and

license rights to the K-Fuel/Koppelman Rights, as well as any and all such

payments related to Royalties.

      b.  Whether the 1992 Royalty Agreements and the 1996 Amendment require

Evergreen to assign and transfer to KVLLC 25% of all non-cash, in kind

consideration received by Evergreen, directly or indirectly by Evergreen's

interest in other entities owned and controlled in whole or in part by

Evergreen, which non-cash, in kind consideration was received or paid for

the granting or providing of licenses and license rights to the K-

Fuel/Koppelman Rights, as well as all such consideration related to

Royalties.

13

51.    In requesting this declaratory relief, KVLLC is requesting an interpretation of the meaning of the language of the 1992 Royalty Agreement and the 1996 Amendment and of the rights, legal status and relationship of KVLLC and Evergreen under Colorado law and the above recited facts.

52.    Such interpretation is appropriate under the provisions of the Colorado Declaratory Judgments Act, C.R.S. § 13-51-101 et seq. and Colo.R.Civ.P. 57.

53.    KVLCC requests the Court to enter its Order declaring answers to the above issues in the affirmative on its behalf.

### SIXTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Obligations)
### Stoner, Kubik, Laughlin and Khan

54.    KVLLC incorporates by reference the allegations set forth above.

55.    On information and belief, Stoner, Kubik, Laughlin and Khan were executive officers of Evergreen and were aware of the 1992 Royalty Agreement and the 1996 Amendment and each of them, with others, by both words and conduct related to the matters discussed above, and after becoming officers of Evergreen, intentionally caused Evergreen not to perform its obligations under the Agreement and Amendment by causing Evergreen to take the actions and inactions as stated above.

56.    The above actions of Stoner, Kubik, Laughlin and Khan were improper and for improper purposes causing damage and loss to KVLLC.  Such actions were extreme and not privileged nor protected, including but not limited to protection as provided under the Colorado Business Judgment Rule.

57.    As a result of the above Interference with Contractual Obligations, KVLLC has had to and will incur costs and attorney fees herein to enforce its rights

under the 1992 Royalty Agreement and the 1996 Amendment and may not be able to

recover damages and relief which would have previously been available but for

Evergreen's breach of these agreements and but for its other actions inconsistent with

KVLLC's rights, as described above.

Wherefore, the Plaintiff prays for and seeks Judgment against the Defendants for:

1.    Damages in an amount to be proven at trial;

2.    Prejudgment and post-judgment interest;

3.    Specific performance as requested above;

4.    Rescission and Restitution as requested above;

5.    Declaratory relief as requested above;

6.    Attorney fees as damages and regarding this action;

7.    Costs of this action; and

8.    Such other relief as which the Court deems proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted this 14th day of June 2011.

THE MADDEN LAW FIRM

John W. Madden, III
370 17th Street, Suite 3500
Denver, CO  80202
madden@themaddenfirm.com
(303) 436-1111

ATTORNEYS FOR PLAINTIFF

Plaintiff's address:
Koppelman Ventures LLC
1406 Graynold Avenue
Glendale, CA  91202

# EXHIBIT 1

附件 A

Exhibit A

### K-Fuel®专利技术描述

### Description of K-Fuel® Patented Technology

一种对褐煤类型的煤炭（实质上保持着开采时的状态，含有20%到40%的水分），包括褐煤、亚烟煤进行改良的工艺，使之更适合用作固体燃料，在这种工艺中，保持着开采时状态的潮湿的褐煤类型的煤炭会在经控制的高温（至少约750华氏度）和高压（至少约1,000磅/平方英寸）下经过高压灭菌处理一段经控制的时间，以便将其中的水分和部分挥发性的有机组成部分转化成气态物质，并实现控制下的煤炭化学结构的热重组。在高压灭菌处理步骤结束时，褐煤类型的煤炭被冷却，更适宜和气态物质接触以致实现可压缩有机组成部分在煤炭表面的沉淀，为品质提升后的煤炭产品提供进一步的稳定性，使得产品不易被水沾湿，在运输和储存中更耐风化和氧化，产品发热量也提高至接近于烟煤的水平。不可压缩的气态物质可回收，能够方便地作为燃料在加热高压灭菌器的过程中进行利用，或进行商业性销售。这样生产出来的品质已获提升的煤炭产品，通常具有坚硬、黑色、有光泽的外表，内部结构也显然比最初的褐煤类型的煤炭有所改变，具有更高的发热量，每磅的发热量通常在约12,000 和13,500英国热量单位之间。相反，保持着开采时的状态的褐煤的发热量只有每磅7,000英国热量单位，即使除去水分，褐煤的发热量也只在每磅10,300至11,900英国热量单位之间。

A process for upgrading lignite-type coal (in a substantially as-mined condition containing from about 20% up to about 40% moisture) including brown coals, lignite and sub-bituminous coals to render it more suitable as a solid fuel in which the moist lignite-type coal in an as-mined condition is subjected to an autoclaving treatment at a controlled elevated temperature (of at least about 750.degree. F) and under high pressure (of at least about 1,000 psi) for a controlled period of time to convert the moisture and a portion of the volatile organic constituents therein to a gaseous phase and to effect a controlled thermal restructuring of the chemical structure thereof. At the conclusion of the autoclaving step, the lignite-type coal is cooled, preferably in contact with the gaseous phase so as to effect a deposition of the condensable organic constituent on the surfaces thereof to provide for a further stabilization of the upgraded coal product, rendering it hydrophobic and more resistant to weathering and oxidation during shipment and storage and is of an increased heating value approaching that of bituminous coal. The noncondensable gaseous phase is recovered and can be advantageously employed as a fuel in the process for heating the autoclave or for commercial sale. The upgraded coal product produced is generally of a hard black glossy appearance, having an internal structure which visibly has been transformed from the original lignite-type coal charge and which is possessed of increased heating values of a magnitude generally ranging from about 12,000 up to about 13,500 BTU per pound. In contrast, consolidated lignite coal on an as-mined basis has a heating value of about 7,000 BTU per pound, while on a moisture-free basis, has a heating value ranging from about 10,300 up to about 11,900 BTU per pound.

附件 A

Exhibit A



# EXHIBIT 2

附件 A 长青能源公司专利和注册商标
**Exhibit A Evergreen Energy Inc. Patents & Registered Marks**

美国专利；中国大陆和台湾相关注册申请
**United Stated Patents; Mainland China & Taiwan Counterparts:**

5,290,523  提高碳素燃料等级的方法和设备
于 2011 年 3 月 1 日失效
中国大陆：专利号：ZL93114175.3；于 2013 年 9 月 28 日失效
台湾：专利号：68779；于 2013 年 10 月 21 日失效

5,290,523  Method and Apparatus for Upgrading Carbonaceous Fuel
Expires March 1, 2011
Mainland China: Patent No. 93114175.3; expires September 28, 2013
Taiwan: Patent No. 68779; expires October 21, 2013

5,769,908  减少碳素物中副产物含量的方法和设备
于 2017 年 4 月 1 日失效
中国大陆：专利号：ZL96196181.3；于 2016 年 7 月 17 日失效
台湾：专利号：118146；于 2018 年 3 月 31 日失效

5,769,908  Method and Apparatus for Reducing the By-Product Content of Carbonaceous
Materials
Expires April 1, 2017
Mainland China: Patent No. ZL96196181.3; expires July 17, 2016
Taiwan: Patent No. 118146; expires March 31, 2018

6,266,894  流体/气体/固体分离装置和方法
于 2018 年 3 月 26 日失效
中国大陆：专利号：ZL98804352.1；于 2018 年 3 月 26 日失效
台湾：专利号：136909；于 2018 年 3 月 26 日失效

6,266,894  Liquid/Gas/Solid Separation Apparatus and Method Thereof
Expires March 26, 2018
Mainland China: Patent No. ZL98804352.1; expires March 26, 2018
Taiwan:   Patent No. 136909; expires March 26, 2018

6,249,989  热交换方法和装置
于 2018 年 3 月 5 日失效
中国大陆：专利号：ZL98804179.0；于 2018 年 3 月 5 日失效
台湾：专利号：115957；于 2018 年 3 月 5 日失效

6,249,989  Method and Apparatus for Heat Transfer
Expires March 5, 2018
Mainland China: Patent No. ZL98804179.0; expires March 5, 2018
Taiwan: Patent No. 115957; expires March 5, 2018

6,185,841  增强的热交换系统
于 2018 年 5 月 6 日失效

中国大陆：专利号：ZL98805381.0；于 2018 年 5 月 6 日失效
台湾：专利号：124374；于 2018 年 5 月 6 日失效

6,185,841    Enhanced Heat Transfer System
Expires May 6, 2018
Mainland China: Patent No. ZL 98805381.0; expires May 6, 2018
Taiwan:    Patent No. 124374; expires May 6, 2018

6,678,174    一种稳定热加工的碳料的方法
于 2018 年 6 月 23 日失效
中国大陆：专利号：ZL98808131.8.；2018 年 6 月 23 日失效
台湾：专利号：201649；2018 年 8 月 6 日失效

6,678,174    Method of Stabilizing Thermally Beneficiated Carbonaceous Materials
Expires June 23, 2018
Mainland China:    Patent No. ZL 98808131.8, expires June 23, 2018
Taiwan:    Patent No. 201649; expires August 6, 2018

6,497,737    加热固体的方法和装置
于 2018 年 8 月 25 日失效
中国大陆：专利号：ZL98808702.2；于 2018 年 8 月 25 日失效
台湾：专利号：117511；于 2018 年 8 月 25 日失效

6,497,737    Method And Apparatus For Heating A Solid Material
Expires August 25, 2018
Mainland China:    Patent No. ZL98 808 702.2; expires August 25, 2018
Taiwan:    Patent No. 117511; expires August 25, 2018

6,506,224    提高固体物料品位的方法和装置
于 2018 年 8 月 25 日失效
中国大陆：专利号：ZL98808426.0；于 2018 年 8 月 25 日失效
台湾：专利号：119466；于 2018 年 8 月 25 日失效

6,506,224    A Method And An Apparatus For Upgrading A Solid Material
Expires August 25, 2018
Mainland China:    Patent No. ZL98 808 426.0, expires August 25, 2018
Taiwan:    Patent No. 119466; expires August 25, 2018

7,198,655    含碳原料热提质的方法和装置
于 2024 年 5 月 3 日失效
中国大陆：申请号：200580014290.4；2005 年 3 月 11 日申请
台湾：申请号：094110135；2005 年 3 月 30 日申请

7,198,655    Method and Apparatus for Thermally Upgrading Carbonaceous Materials
Expires: May 3, 2024
Mainland China: Application No. 2005 800142904; filed March 11, 2005
Taiwan:    Application No. 094110135; filed March 30, 2005

6,497,054    改进多孔含水含碳固体材料的方法和装置
于 2018 年 8 月 24 日失效

Exhibit A/附件 A



中国大陆：专利号：ZL01818618.1；于 2021 年 9 月 26 日失效
台湾：记录中未显示有专利授权或进行中的专利申请

6,497,054    Method And Apparatus For Upgrading Solid Material By Removing Water From
A Porous, Water Containing, Carbonaceous, Solid Material
Expires August 25, 2018
Mainland China:    Patent No. ZL01818618.1; expires September 26, 2021
Taiwan:    No patent or pending patent application of record

注册商标：
**Registered Trademark:**

"K-Fuel"：美国注册号：3，171，807，于 2006 年 11 月 14 日注册
"K-Fuel": United States Registration No. 3,171,807, registered November 14, 2006

中国大陆：申请号：65114107；于 2008 年 1 月 15 日申请
Mainland China:    Application Serial No. 65114107; filed January 15, 2008

台湾：申请注册号：01325582，于 2008 年 9 月 1 日申请
Taiwan:    Application Registration No. 01325582, registered September 1, 2008

注册服务商标：
**Registered Service Mark:**

"K-Direct"：美国注册号 3，397，666，于 2008 年 3 月 18 日注册
"K-Direct": United States Registration No. 3,397,666, registered March 18, 2008

中国大陆：申请号：6446895；于 2007 年 12 月 21 日申请
Mainland China:    Application Serial No. 6446895; filed December 21, 2007

台湾：申请号：096060130；于 2007 年 12 月 21 日申请
Taiwan:    Application Serial No. 096060130, filed December 21, 2007

Exhibit A/附件 A

